IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES SLAUGHTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 05 C 5988 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Slaughter brought this action against Jo Anne Barnhart, Commissioner of Social Security, as an appeal of his unsuccessful claim for social security benefits. Claimant filed for disability insurance benefits and supplemental security income on March 28, 2003, alleging disability from a groin hernia initially occurring on December 31, 2000. Claimant's application was initially denied, and again on reconsideration. On June 28, 2005, Administrative Law Judge Helen Cropper held a hearing on the question of disability. On July 7, 2005, the ALJ issued a determination, finding that claimant was not disabled. Thereafter, the Appeals Council denied claimant's request for review. Pursuant to his rights under the Social Security Act (42 U.S.C. § 405), claimant filed this action on December 28, 2005, seeking judicial review of the Commissioner's determination. Throughout the administrative process, and in the current action, claimant has proceeded and continues to proceed without the assistance of counsel. Defendant has moved for summary judgment. For the reasons stated below, we deny in part defendant's motion for summary judgment and remand to the Administrative Law Judge for further development of the record.

## BACKGROUND

At the time of the hearing, claimant was 50 years old and complained of pain from a hydrocelectomy (draining of a benign mass on his right testicle), fainting spells, and pain in his back and knees. He lived with his sister, an arrangement that had been in place since his divorce in 1983.[1] Claimant had been receiving public aid for one year, including $100 per month, a medical card, and food stamps. He had an eleventh grade education, had attended a truck-driving school and obtained a commercial driver's license. Claimant had been unemployed since 2000. Prior to that, he worked on and off at a variety of jobs, including local truck driver, odd jobs, warehouse employee, courier, and chemical mixer. Claimant indicated that he could not work at the time of the hearing because he did not have the training, could not get hired, and had to miss work for doctors' appointments too often to maintain steady employment.

According to his testimony, claimant's medical concerns began with a hydrocele on his right testicle. The hydrocele was removed – a successful surgery that required three to four followup appointments. Although the doctor's notes did not indicate any complications from the surgery, claimant stated in his testimony that "everything started breaking down" after the surgery (Admin. Rec. 225), alluding to fainting spells and high blood pressure. Claimant's testimony further indicated that his failure to go back to the doctor after the surgery was due to his concern over the money he owed the hospital.

At some point after his hydrocelectomy, claimant had three fainting spells, preceded by heavy coughing and a strange taste in his mouth. When claimant finally returned to a doctor to discuss his fainting spells, he saw a different doctor at a different clinic, where they began

---

[1] Claimant later stated that his divorce was either in 1983 or 1987.

his evaluation and treatment anew. After three emergency room visits for fainting spells, claimant's doctor referred him to a neurology clinic, where an EEG and MRI came back normal. Without following up from the neurology clinic, claimant returned to his primary physician, where he was treated for high blood pressure, high cholesterol and headaches. Aside from the medication prescribed for the high blood pressure and cholesterol, claimant's doctor also suggested a low sodium diet and exercise. At the time of the hearing, claimant was complying with his diet and walking for exercise. Claimant also complained to his primary doctor about his knee and back pain, and was told that he should exercise. Claimant's medical records show no notations of knee and/or back pain.

Although claimant had been to a psychiatrist on one occasion and noted emotional problems following the divorce from his wife, he rejected any contention that he currently suffered from mental or emotional problems and had never been referred to a treatment program or been placed on medication. Claimant's medical records showed that at one time he was drinking three cans of beer every day, but at the hearing he testified that he drank a can of beer every other day and occasionally drank hard liquor. Although claimant had been pulled over for driving under the influence some time ago, alcohol was no longer a problem and was never a cause for leaving a job. After a domestic dispute, claimant completed a six-month anger management program, and has since had no problems with violence.

At the time of the hearing, claimant's daily schedule included social visits, walking, doctors' appointments, and some cooking and cleaning. Claimant awoke at 6:30 a.m., took 15-20 minutes to rise, got coffee, and went to the doctor or took a walk. He would stay out most of the day, visiting friends or going to the park. When home, claimant was able to cook a bit, sweep, keep his room clean, do his laundry, do his dishes, take out the garbage, and do some

shopping. He enjoyed playing pool, watching sports, playing cards, and spending time with his long-time girlfriend and family. When pressed, claimant indicated that he could comfortably lift 25 pounds, stand 15 minutes, walk 20 minutes, and sit for an hour without moving. In addition to her questioning, the ALJ allowed claimant to make any further remarks and to ask the vocational expert any questions. Claimant, however, did not take that opportunity.

## DISCUSSION

### Standard of Review

Where, as here, the Appeals Council denies a request for further review, the ALJ's findings constitute a final decision. 20 C.F.R. § 404.981; Herron v. Shalala, 19 F.3d 329, 332 (7th Cir.1994). Such a decision deserves substantial deference, and we may not "decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the [Commissioner]." Herron, 19 F.3d at 333. See also Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir.2004). While we may affirm, modify or reverse the Commissioner's determination with or without remanding for a rehearing, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). See also Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir.2003) ("We will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law"). In order to survive a district court review, an ALJ's denial of benefits, however, must be accompanied by an explanation creating an "'accurate and logical bridge from the evidence to his conclusion.'" Lopez, 336 F.3d at 529 (citing Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir.2000)).

In this case, claimant's application for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social

Security Act can be treated together. Both titles of the Act use the same definition of "disability"– an individual is "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An "individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. §§ 423(d)(2)(1); 1382c(a)(3)(B). In order to determine whether an individual is "disabled," the Commissioner must undertake a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. The steps must be taken in order, and a finding that claimant is not disabled at any time ends the inquiry. Greenwood v. Barnhart, __ F.Supp.2d __, 2006 WL 1408440, *8 (N.D.Ill. 2006). "Under this process, the ALJ must inquire: (1) whether the claimant is still working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) if the claimant does not suffer from a listed impairment, whether he can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." Id. See also Young, 362 F.3d at 1000. In this case, the ALJ proceeded through all five steps, ultimately finding that although claimant was not capable of performing past relevant work, he was capable of performing some work in the national and regional economy.

In addition to developing a full and fair record with regard to the five-step inquiry, the ALJ has an additional burden where the claimant is not represented by one trained in disability law. Thompson v. Sullivan, 933 F.2d 581, 585-86 (7th Cir.1991); Cannon v. Harris, 651 F.2d 513,

519 (7th Cir.1981); Hodges v. Barnhart, 399 F.Supp.2d 845, 854 (N.D.Ill.2005). This circuit has repeatedly held that "where the claimant is unassisted by counsel, the ALJ has a duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts....'" Cannon, 651 F.2d at 519 (internal citations omitted).

A claimant in a disability hearing has a statutory right to counsel. 42 U.S.C. § 406; Thompson, 933 F.2d at 584. Although the claimant may waive his right to counsel, he must first be given sufficient information to make that decision. "Information that will ensure a valid waiver of counsel includes an explanation of the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees." Thompson, 933 F.2d at 584. In this case, between the letter sent to claimant explaining the denial of his benefits, the waiver of representation signed by claimant, and the ALJ's explanation of the usefulness and availability of counsel, we find that claimant validly waived his right to counsel.[2] Although claimant's waiver of his right to counsel was valid, the ALJ has a heightened responsibility to an unrepresented claimant regardless of the waiver's validity. Binion v. Shalala, 13 F.3d 243, 245 (7th Cir.1994) ("the ALJ has the same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid").

---

[2] We do note that the denial letter explained, regarding the hiring of an attorney for the disability hearing, that "[i]f you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee. We do not withhold money from SSI benefits to pay your lawyer" (Admin. Rec. 25). We note that the language of that letter regarding the 25 percent attorneys' fee cap is unclear. The language "pay toward the fee" implies that the fee may exceed the 25 percent withheld from claimant's past due benefits. See Thompson, 933 F.2d at 584 (noting the importance of explaining the 25 percent cap on lawyers' fees in a disability case). Because the ALJ did explain that there would be a cap on fees and the waiver specifically explained the 25 percent cap, however, we find that the claimant was fully informed of his rights.

In undertaking the five-step disability assessment, the ALJ determined that (1) claimant was not engaged in substantial gainful activity; (2) claimant had a severe impairment; (3) claimant's impairment did not meet or equal a listed impairment; (4) claimant could not perform his past relevant work and his residual functional capacity ("RFC") was the ability to perform and sustain light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with certain limitations; and (5) considering claimant's age, education, past work experience, and RFC, claimant could perform jobs existing in the regional and national economy. We find that the ALJ just barely fulfilled her heightened duty to claimant with regard to the fourth step and failed with respect to the fifth step of the disability determination.

In making the RFC determination, the ALJ considered claimant's medical history, including his treatment for a hydrocele, fainting episodes, and complaints of low back and knee pain. She considered that claimant had little documented treatment for his medical problems, that his hydrocelectomy was successful and without complications, that the neurological exams undertaken for his fainting spells returned normal, ruling out a seizure disorder, and that the doctors who reviewed claimant's file at the request of the Illinois Disability Determination Service found that claimant's hydrocele was not a severe limitation. The ALJ considered claimant's daily activities and his ability to visit friends, cook, clean, empty the garbage, do laundry, shop, and engage in social activities. She concluded: "I give some credit to claimant's testimony, but note that he describes some ability to perform at least sporadic work activity and he has relatively normal reported daily and social activities, despite his reported limitations. He has only rarely sought medical attention, and has not made documented complaints to his treating physicians of severe musculoskeletal problems. The fairly extensive tests related to the fainting spells have all been normal, and apparently have ruled out a seizure disorder or other

serious neurological impairment" (Admin. Rec. 16).

The RFC is an administrative assessment of what work-related activities an individual can perform, despite his limitations. Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001). In determining claimant's RFC, the ALJ should consider all the relevant medical and non-medical evidence in the case record, including both "severe" and "non-severe" impairments. 20 C.F.R. § 404.1545. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence .... In assessing RFC, the [ALJ] must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) .... The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Greenwood, 2006 WL 1408440 at *9 (citing SSR 96-8p).

The ALJ did not have an opportunity to review claimant's medical records prior to his hearing, and, combining that with claimant's garbled and confused memory and understanding of his medical condition, we are concerned that she failed to request a medical opinion regarding claimant's fainting spells. She requested a doctor's evaluation of claimant's condition with regard to his hydrocele (through the Illinois Disability Determination Service), but did not do the same for the fainting spells (Admin. Rec. 15).[3] As part of the ALJ's responsibility to develop a complete record, she is responsible for "developing [claimant's] complete medical history, including arranging for a consultative examination(s) if necessary,

---

[3] Therefore, defendant's citation to Anderson v. Bowen, 868 F.2d 921, 926 (7th Cir.1989) is misplaced. In Anderson, the claimant was appointed counsel and examined by two physicians retained by the State of Illinois for consultation. Neither of those physicians found that claimant was unable to perform light work. 868 F.2d at 926. In this case, however, no doctor examined claimant with respect to his ability to work.

and making every reasonable effort to help [claimant] get medical reports from [claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). We can only assume that based on the ALJ's review of the medical evidence and claimant's testimony, she found it unnecessary to get further testimony from a medical expert. Although we question her decision, the ALJ pointed to specific findings of claimant's medical condition, including a positive medical examination after his hydrocelectomy, normal neurological examinations, and normal blood tests, EEG and MRI. Thus, we find that the ALJ "satisfied [her] minimal duty to articulate [her] reasons and make a bridge between the evidence and the outcome as to [her] step [four] determination." Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir.2004).[4]

Although we have articulated concerns about the ALJ's assessment of claimant's RFC, it is step five that poses the greatest concern. If, as here, the ALJ determines that the claimant is unable to do past relevant work, the burden shifts to the Commissioner to identify other jobs that claimant can perform. Young v. Secretary of Health and Human Services, 957 F.2d 386, 389 (7th Cir.1992). In determining that claimant was able to work in a number of jobs available in the regional and national economy, the ALJ relied on statements made by the vocational expert, Mr. Schweihs: "I adopt the otherwise uncontradicted testimony of the vocational expert, and find that considering the claimant's age, educational background, work experience, and RFC, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy" (Admin. Rec. 19).

---

[4] We are also concerned that the ALJ did not encourage Aridell Slaughter to testify as to claimant's limitations. Ms. Slaughter arrived as claimant's representative and stated that she could corroborate claimant's testimony. Because credibility is an important part of the disability determination, we feel that the ALJ could have explained that collaborative testimony might be useful. Because an ALJ is in the best position to make a credibility determination, we will not reverse that determination unless it was "patently wrong." Dixon, 270 F.3d at 1177. Therefore, although we question whether the ALJ did everything she could to develop the record for a *pro se* claimant, we will not disturb her RFC determination.

We find that the ALJ's reliance on Mr. Schweihs' assessment was misplaced because Mr. Schweihs lacked important information necessary to adequately respond to the ALJ's hypotheticals. In posing the hypotheticals, the ALJ limited her questioning to one hypothetical, asking two followup questions. Initially, the ALJ posed a hypothetical introducing claimant's age, education, past relevant work experience, and an RFC of light exertional level, with certain limitations. In his response to the ALJ's proposed limitations, the expert indicated that claimant would be capable of performing a wide range of unskilled jobs, including packing, assembly, and visual inspection, available in the national and regional economy (Admin. Rec. 253). In response to an additional limitation, work at a sedentary level, the expert indicated that the same jobs cited earlier could be done at the sedentary level (*id.*, at 254). Finally, Mr. Schweihs indicated that an unproductive and off-task worker would not be employable in a competitive unskilled job market (*id.*).

Hypothetical questions posed to vocational experts in a disability hearing "must fully set forth the claimant's impairment to the extent that they are supported by the medical evidence in the record." Herron, 19 F.3d at 337 (internal citations omitted). Where, however, the expert learns of the claimant's medical evidence by doing an independent review of the medical evidence or through questioning at trial, the hypothetical questions need not set forth every detail of the claimant's medical impairments. *Id.*; Young, 362 F.3d at 1003.

Because the claimant here introduced his medical files for the first time just prior to the disability hearing, neither the ALJ nor the vocational expert had the opportunity to review them prior to taking testimony. In fact, the ALJ noted, "Now, the, the [sic] records I have, before today, I had almost no medical records" (Admin. Rec. 224). And prior to his testimony, Mr. Schweihs indicated that he did not have an opportunity to review the claimant's recently

produced medical evidence (*id.*, at 246). The ALJ disregarded that concern, noting, "And that I think is all medical and nothing vocational" (*id.*). Because "[i]t is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform" (Young, 362 F.3d at 1003), such an oversight is of concern to us. Our concern is slightly alleviated by the ALJ's attempt to garner the medical evidence from the claimant's testimony. Because claimant's testimony was at times confused and out of chronological order, however, and no medical expert was present to testify, without undertaking an independent review of the claimant's medical files, Mr. Schweihs' determination was made based on incomplete information.

Additionally, we note that in his testimony, claimant indicated that he had to visit the doctor as often as every other week (Admin. Rec. 224). The ALJ failed to pose such a limitation to Mr. Schweihs for his expert opinion. Therefore, although Mr. Schweihs heard that testimony, he was unable to completely respond to it. "Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record." Young, 362 F.3d at 1003. Our review of the medical evidence shows that claimant had an appointment or visited a doctor in 2004, for example, on March 22, April 5, April 19, May 17, June 7, June 28, June 29, July 29, September 27, September 30, and December 9.[5] Although it is unclear whether such regular visits have ceased upon completion of claimant's neurological testing, or whether followup appointments will continue, we cannot know without further information. Claimant did not testify to upcoming medical appointments, but did indicate that

---

[5] *See* Admin. Rec. pp. 143, 145, 147, 148, 151, 153, 154, 156, 158, 160, 167, 171, 176. We recognize that because the medical records are out of order and somewhat illegible, our count may be somewhat mistaken. The reality is, however, that claimant has, at least at one time, spent much of his time visiting doctors.

he would have to miss work often for such appointments. Failure to account for such medical time off work in a hypothetical to the vocational expert is, in our opinion, an error. Such is especially true where claimant was unrepresented, lacking an advocate to raise such issues on his behalf. Thus, we feel compelled to remand the claimant's case to the ALJ to include in the record testimony of the vocational expert on such matters.

In his response to defendant's motion for summary judgment, claimant indicates that his impairments have changed since denial of his disability benefits (cplt, ¶ 4) ("Fact number two, my disability has changed and hindered me in the last three years from obtaining gainful employment and becoming financially independent"). Defendant argues that while such evidence may be acceptable for a new application for disability benefits, it is not relevant to the case at hand. Defendant further argues that such evidence cannot form the basis for remand pursuant to § 405(g), sentence six.[6]

"To merit a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), a claimant must show that 'there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding.' Evidence is 'material' if there is a 'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered.'" Jens v. Barnhart, 347 F.3d 209, 214 (7th Cir.2003) (internal citations omitted). We agree with defendant that if claimant has developed new medical impairments since the ALJ's decision, evidence supporting such problems is relevant to a new application for benefits, not a reason to remand the current case. *See* Kapusta v. Sullivan, 900

---

[6] 42 U.S.C. § 405(g), sentence six reads, "The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...."

F.2d 94, 97 (7th Cir.1990); Godsey v. Bowen, 832 F.2d 443, 445 (7th Cir.1987); Murphy v. Barnhart, 417 F.Supp.2d 965, 973-74 (N.D.Ill.2006) ("evidence is not material if it addresses only a claimant's condition after the ALJ has issued his decision"). Therefore, although we remand this case to the ALJ, we remand under sentence four of § 405(g) for an insufficient review of existing evidence, not under sentence six of § 405(g) for new evidence. *See* O'Connor v. Shalala, 23 F.3d 1232, 1233 (7th Cir.1994); Curtis v. Shalala, 12 F.3d 97, 99-100 (7th Cir.1993). Thus, any evidence that relates to the claimant's medical complaints after the date of his hearing cannot be raised at the remanded hearing.

## CONCLUSION

For the reasons stated above, we deny in part defendant's motion for summary judgment and remand to the Administrative Law Judge to further develop the record.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 21, 2006.